Stone, J.
The aggregate amount of the several sums found due the defendants in error as lien claimants, exceeded $2,000, and it is assigned for error that, under the constitutional limitation of the jurisdiction of county courts to $2,000 as to the amount claimed, the court below was without jurisdiction to render the decree. We cannot regard the decree as open to this objection. The 'demands of the lien claimants are several in their nature and in the mode of their enforcement. Each files his separate statement as the statute requires. Each presents his separate petition to inforce the lien, and therein sets out his particular cause of action. The individual claim of no one exceeds the sum of $2,000.
The court renders a decree several as to each claimant, and so long as no one claim exceeds $2,000, it is no objection that the aggregate amount of all the claims is in excess of that sum. Each claim so presented is, in its nature, a several and distinct action, but in order to avoid a multiplicity of writs, sales and costs, and to prevent preferences among lien claimants arising from priority of decrees, sales and payments, the statute has provided a mode of inforcing these several rights, whereby all the claims may be heard and determined in, nominally, one proceeding, adjudicated at one time, and inforced under one de *458 cree; a mode which was evidently intended to be the most equitable and the least expensive. In the case of Power et al., v. McCord et al., 36 Ill., 221, the court, in discussing the provisions of the statute requiring the court to ascertain the amount due each creditor and to dire'ct the application of the proceeds of sales, say:
“These provisions are peremptory, and the court on the trial must ascertain the sum due to each claimant before a decree is rendered directing the sale of the property, and the application of its proceeds to the claimants in proportion to the amount found due to each, if not sufficient to pay all of their claims. It may be, and perhaps is, the better practice to empanel a jury to pass upon and find the amount due each claimant, as though there were separate proceedings. But when there are few parties and the claims are not complicated, no objection is perceived to submitting the whole case to the same jury. But a final decree, ordering a sale of the property, should not be rendered until the sum due each of the claimants is ascertained. Then their several rights should be declared in the decree, and the property sold, if payment is not made by the day fixed in the decree, to satisfy the sums due to the several claimants.”
We think the intent of the statute is manifest, and that it was competent for the legislature to provide that any number of claims against the same property, where no one exceeds $2,000 in amount, may be adjudicated in one proceeding, without infringing the constitutional limitation referred to.
In this view we think the extent of the jurisdiction of county courts, as to their pecuniary limit in these cases, is to be measured by the amount involved in each claim severally, and not the aggregate of all the claims presented against the same property.
The record shows that the property previous to December 15, 1876, was owned by one Strong and others, by whom the claimants were severally employed to do the work and furnish the materials for which the liens were claimed. That such work was continued up to the said 15th day of December; that on that date the property was purchased by the Keystone Mining Company, to whom it was conveyed by good and sufficient deed, and that the lien “statements” of all the claimants were filed with the county clerk in the manner provided by statute, in the *459 following month, January, 1877. Upon this state of facts, it is claimed by plaintiffs in error that no valid decree could be rendered against the Keystone Mining Company, for the reason that at the time the property was conveyed to the company there were no liens in existence; that the liens only attach from the date of filing the statements required by statute. This construction cannot be given to our statute. The identical point has been passed upon by this court in the case of Mellor v. Valentine, 3 Colo., 258, where it is held that the legal effect of the latter clause of section 7, of the act of 1872, which declares that “all liens herein provided for shall be preferred to every other lien or encumbrance which shall attach upon any property made subject thereto subsequent to the time when work or labor was commenced, or the first of the materials furnished; and also to all mortgages and other encumbrances unrecorded at the time such work or labor was commenced or the first of such materials were furnished,” etc., is to give the mechanic, laborer or material man a lien from the date of the commencement of the labor or the furnishing of materials. The same construction and legal effect is given to a similar provision of a statute by the Supreme Court of Iowa in the case of Monroe v. West, 12 Iowa, 121. See also, Philips on Mechanics’ Liens, Sec. 228.
Another point made by counsel for plaintiffs in error is, that the county courts, being created by the constitution, were without jurisdiction except such as given by the constitution, expressly in relation to the estates of deceased persons, until further powers were conferred by law, which was not done until the acts of the general assembly of the state in relation thereto took effect June 22, 1877. This position is untenable, not because of the provisions of section 8, of the schedule, cited by counsel, and which we conceive does not confer the jurisdiction claimed by such courts prior to June 22, 1877, but by the provisions of section 9, of the schedule of the constitution, which are, that “the terms ‘probate court,’ or ‘probate judge,’ whenever occurring in the statutes of Colorado territory, shall, after the adoption of this constitution, be held to apply to the county court or county judge; and all laws specially applicable to the probate court in any county, shall be construed to apply to and be in force as to any county court in the same county, until repealed.”
*460 Under this provision, upon the adoption of the constitution, the county courts created thereby were immediately clothed with all the powers theretofore possessed by the probate courts.
All the lienors except Blodgett claim for work done and materials furnished in the mine, and for the working of the mine directly. Blodgett’s claim is for furnishing the material for, and building a house or shop contiguous to the mine, and built for the use of the mine, under the direction of the mining superintendent. The house was owned by the owners of the mine, and was a part of the mining property, and we see no error in the decree in favor of Blodgett, and for the sale of the house, together with the mine, for the purpose of inforcing the liens.
The proofs to establish the claims of Coan and Gillett, were sufficient to warrant the decree as to them respectively.
It is objected that the decree as to Boettcher’s claim is erroneous, because the articles furnished by him were not of the character comprehended by the lien law, specifying, “timber or other materials to be used in or about the mine.” The testimony shows that the articles furnished were powder, steel and candles, for the use of the mine. These articles are as clearly within the meaning of the statute as anything we can conceive of, essential to the working of a mine.
That Strong was not personally served, and did not appear, is no ground of error in the decree. Service as to him was made by publication in accordance with the statute providing for such case.
The only other assignment of error necessary to notice is, that the decree provided for a sale in less than ninety days.
The act under which the proceedings were had provides that the premises may be sold “within the time and in the manner provided for sales on execution, issued out of any court of record.” That the sale was made in accordance with the statute, appears by the record.
The regularity of the decree in this respect therefore cannot be questioned. The Illinois cases cited by counsel upon this point are not apt, inasmuch as the sales referred to in those cases were fixed by the lower court in its discretion, and the Supreme Court held, that in the absence of statutory provision governing the length of notice, the time should not be less than ninety days, *461 that being the ordinary lifetime of an execution in chancery proceedings in that state.
Butler & Wright and W. A. Hardenbrook, attorneys for plaintiff in error.
Blake & Wkitely, attornys for defendant in error.
There being no error in the proceedings, the decree of the court below is affirmed.

Decree affirmed.